Keith J. Miller
Bradley A. Suiters
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
Tel: (973) 690-5400

*Attorneys for Plaintiffs
Genentech, Inc., Hoffmann-La Roche Inc.,
and PTC Therapeutics, Inc.*

Eric Alan Stone
Daniel J. Klein*
Eliza P. O'Connor*
Aileen Huang*
GROOMBRIDGE, WU, BAUGHMAN
   & STONE LLP
565 Fifth Ave, Suite 2900
New York, NY 10017
Tel: (332) 269-0030

Philip S. May
Alyssa B. Ertel*
GROOMBRIDGE, WU, BAUGHMAN
   & STONE LLP
801 17th Street NW, Suite 1050
Washington, D.C. 20006
Tel: (202) 505-5830

\*_Pro hac vice_ application forthcoming

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GENENTECH, INC., HOFFMANN-LA ROCHE INC., and PTC THERAPEUTICS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ZENARA PHARMA PRIVATE LIMITED, BIOPHORE PHARMA INC., BIOPHORE INDIA PHARMACEUTICALS PRIVATE LIMITED, <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Genentech, Inc. ("Genentech"), Hoffmann-La Roche Inc. ("Roche"), and PTC Therapeutics, Inc. ("PTC"), for their Complaint against Defendants Zenara Pharma Private Limited ("Zenara"), Biophore Pharma Inc. ("BPI"), Biophore India Pharmaceuticals Private Limited ("BIPPL" and collectively with BPI, "Biophore") allege as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the laws of the United States, including 35 U.S.C. §§ 271(a), (b), (c), (e), and (f), arising from Zenara's Abbreviated New Drug Application No. 221422 (the "Zenara ANDA") to the United States Food and Drug Administration ("FDA"), by which Zenara and Biophore seek approval to market a generic version of Genentech and Roche's pharmaceutical product EVRYSDI® (risdiplam) tablets prior to the expiration of one or more of United States Patent Nos. 9,586,955 (the "'955 Patent"), 9,969,754 (the "'754 Patent"), 11,534,444 (the "'444 Patent"), 11,827,646 (the "'646 Patent"), 12,122,789 (the "'789 Patent"), and 12,350,273 (the "273 Patent" and, collectively with the '955 Patent, the '754 Patent, the '444 Patent, the '646 Patent, and the '789 Patent, the "Asserted Patents"), which cover, *inter alia*, EVRYSDI® tablets and/or their use.

## THE PARTIES

### Plaintiffs

2. Plaintiff Roche is a New Jersey corporation with a principal place of business at 150 Clove Road, Little Falls, NJ 07424. Roche is a pharmaceutical company that researches, develops, and manufactures drugs to address unmet medical needs. Roche helped develop and obtained approval from FDA to market EVRYSDI®, the first and only therapy approved by FDA for treatment of spinal muscular atrophy ("SMA") in adults and children two months of age and older that can be administered orally at home.

3.     Plaintiff Genentech is a Delaware corporation with a principal place of business at One DNA Way, South San Francisco, CA 94080.  Genentech is a biotechnology company that develops, manufactures, and commercializes medicines to treat patients with serious and life-threatening medical conditions.  Genentech holds the exclusive right to sell, distribute, and market EVRYSDI® tablets in the United States.

4.     Plaintiff PTC is a Delaware corporation with a principal place of business at 500 Warren Corporate Center Drive, Warren, NJ 07059.  PTC is a pharmaceutical company focused on the discovery, development, and commercialization of clinically differentiated medicines that provide benefits to patients living with rare disorders.

## Defendants

5.     On information and belief, Defendant Zenara is a corporation organized and existing under the laws of India, having its corporate offices and principal place of business at Plot 83/B, 84, 87 to 96, Phase III, Industrial Development Area, Cherlapally, Hyderabad, 500051, India.  On information and belief, Zenara is a wholly owned subsidiary of BIPPL and is controlled by BIPPL.

6.     On information and belief, Defendant BPI is a corporation organized and existing under the laws of New Jersey having its corporate offices and principal place of business at 4262 US-1 Suite A, Monmouth Junction, NJ 08852.  On information and belief, BPI is a wholly owned subsidiary of BIPPL and is controlled by BIPPL.

7.     On information and belief, Defendant BIPPL is a corporation organized and existing under the laws of India having its corporate offices and principal place of business at Plot #92; 1-98/2/92, Kavuri Hills – Phase II, Jubilee Hills, Hyderabad, 500033, Telangana, India.

8.      On information and belief, BPI and BIPPL acted in concert with Zenara to prepare and file the Zenara ANDA.

9.      BIPPL is subject to a decree in India prohibiting it from manufacturing or selling any pharmaceutical product, which infringes the Indian Patent No. 334397, which claims priority to U.S. Provisional Application No. 61/993,839, the same application to which the '754 Patent and '646 Patent claim priority.

10.     BIPPL has stated on the record in court proceedings in India that BIPPL "has neither manufactured nor sold any commercial/ non-commercial quantity of Risdiplam in India or anywhere else."  Exhibit A (Order regarding IN 334397).

**JURISDICTION**

11.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, and this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

12.     This Court has personal jurisdiction over Zenara under Fed. R. Civ. P. 4(k)(2) because, on information and belief, Zenara is organized under the laws of India and is not subject to jurisdiction in any State's courts of general jurisdiction and because exercising jurisdiction is consistent with the United States Constitution and laws, including because Zenara has sufficient contacts with the United States that relate to the claims in this case.

13.     This Court also has personal jurisdiction over Zenara by virtue of, *inter alia*, its having engaged in systematic and continuous contacts with the State of New Jersey; its having previously admitted, consented to, or declined to contest the jurisdiction of this Court; and/or its having availed itself of this Court's rights, benefits, and privileges by asserting claims and counterclaims in prior District of New Jersey actions.  *See, e.g.*, *Merck Sharp & Dohme BV et al. v. Aurobindo Pharma USA, Inc. et al.*, Civ. No. 20-02576, Dkt. 83-1 (D.N.J. July 15, 2021); *Merck*

4

*Sharp & Dohme BV et al. v. Biophore Pharma Inc. et al.*, Civ. No. 20-03795, Dkt. No. 9 (D.N.J. May 13 2020); *GW Rsch. Ltd. v. Teva Pharms., Inc. et al.*, Civ. No. 23-00018, Dkt. No. 84 (D.N.J. Mar. 14, 2023); *Jazz Pharms. Rsch. UK Ltd. v. Teva Pharm., Inc. et al.*, Civ. No. 23-03914, Dkt. No. 37 (D.N.J. Sept. 19, 2023); *Jazz Pharms. Rsch. UK Ltd. v. Apotex Inc. et al.*, Civ. No. 23-23141, Dkt. No. 36 (D.N.J. Mar. 21, 2024); *Jazz Pharms. Rsch. UK Ltd. v. Apotex Inc. et al.*, Civ. No. 24-07550, Dkt. No. 11 (D.N.J. July 9, 2024); *Supernus Pharms., Inc. v. Zenara Pharma Private Ltd. et al.*, Civ. No. 25-13207, Dkt. No. 9 (D.N.J. Sept. 16, 2025).

14.     On information and belief, Zenara is in the business of manufacturing generic pharmaceuticals that it distributes or has distributed in the State of New Jersey and throughout the United States.

15.     Zenara has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, including Genentech, who sell EVRYSDI® tablets for use throughout the United States, including in this judicial District.  On information and belief, and as indicated by the Zenara Notice Letter (as further defined herein), Zenara prepared and filed, or aided, abetted, contributed to, and/or participated in the preparation and filing of the Zenara ANDA with the intention of seeking to market generic risdiplam nationwide, including within this judicial District.

16.     On information and belief, Zenara plans to market and sell generic risdiplam in the State of New Jersey, list generic risdiplam on the State of New Jersey's prescription drug formulary, and seek Medicaid reimbursement for sales of the ANDA products in the State of New Jersey, either directly or through one or more of Zenara's wholly owned subsidiaries, agents, and/or alter egos.

17.    On information and belief, Zenara knows and intends that its proposed generic risdiplam product will be distributed and sold in New Jersey and will thereby displace sales of EVRYSDI® tablets, causing injury to Plaintiffs.  Zenara intends to take advantage of its established channels of distribution in New Jersey for the sale of its proposed generic risdiplam product.

18.    Although this Court has personal jurisdiction over Zenara for at least the reasons set forth above, in the absence of such personal jurisdiction in any single state, a foreign entity such as Zenara is subject to jurisdiction throughout the United States.  *See* Fed. R. Civ. P. 4(k)(2); *see, e.g.*, *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1311–12 (Fed. Cir. 2019); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1003 (Fed. Cir. 2018).

19.    This Court has personal jurisdiction over BPI by virtue of, *inter alia*, it being incorporated in the State of New Jersey and having a principal place of business in Monmouth Junction, NJ, and its having engaged in systematic and continuous contacts with the State of New Jersey; its having previously admitted, consented to, or declined to contest the jurisdiction of this Court; and/or its having availed itself of this Court's rights, benefits, and privileges by asserting claims and counterclaims in prior District of New Jersey actions.  *See, e.g.*, *Merck Sharp & Dohme BV et al. v. Aurobindo Pharma USA, Inc. et al.*, Civ. No. 20-02576, Dkt. No. 83-1 (D.N.J. July 15, 2021); *Merck Sharp & Dohme BV et al. v. Biophore Pharma Inc. et al.*, Civ. No. 20-03795, Dkt. No. 9 (D.N.J. May 13,  2020); *GW Rsch. Ltd. v. Teva Pharm., Inc. et al.*, Civ. No. 23-00018, Dkt. No. 84 (D.N.J. Mar. 14, 2023); *Jazz Pharms. Rsch. UK Ltd. v. Teva Pharm., Inc. et al.*, Civ. No. 23-03914, Dkt. No. 37 (D.N.J. Sept. 19, 2023); *Jazz Pharms. Rsch. UK Ltd. v. Apotex Inc. et al.*, Civ. No. 23-23141, Dkt. No. 36 (D.N.J. Mar. 21, 2024); *Jazz Pharms. Rsch. UK Ltd. v. Apotex Inc.*

*et al.*, Civ. No. 24-07550, Dkt. No. 11 (D.N.J. July 9, 2024); *Supernus Pharms., Inc. v. Zenara Pharma Private Ltd. et al.*, Civ. No. 25-13207, Dkt. No. 9 (D.N.J. Sept. 16, 2025).

20.    On information and belief, BPI is in the business of manufacturing generic pharmaceuticals that it distributes or has distributed in the State of New Jersey and throughout the United States. BPI has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, including Genentech, who sell EVRYSDI® tablets for use throughout the United States, including in this judicial District.  On information and belief, and as indicated by the Zenara Notice Letter (as further defined herein), BPI prepared and filed, or aided, abetted, contributed to, and/or participated in the preparation and filing of the Zenara ANDA with the intention of seeking to market generic risdiplam nationwide, including within this judicial District.

21.    On information and belief, BPI plans to market and sell generic risdiplam in the State of New Jersey, list generic risdiplam on the State of New Jersey's prescription drug formulary, and seek Medicaid reimbursement for sales of the ANDA products in the State of New Jersey, either directly or through one or more of BPI's wholly owned subsidiaries, agents, and/or alter egos.

22.    On information and belief, BPI knows and intends that its proposed generic risdiplam product will be distributed and sold in New Jersey and will thereby displace sales of EVRYSDI® tablets, causing injury to Plaintiffs.  BPI intends to take advantage of its established channels of distribution in New Jersey for the sale of its proposed generic risdiplam product.

23.    This Court has personal jurisdiction over BIPPL under Fed. R. Civ. P. 4(k)(2) because, on information and belief, BIPPL is organized under the laws of India and is not subject to jurisdiction in any State's courts of general jurisdiction and because exercising jurisdiction is

7

consistent with the United States Constitution and laws, including because BIPPL has sufficient contacts with the United States that relate to the claims in this case.

24.    On information and belief, BIPPL is in the business of manufacturing generic pharmaceuticals that it distributes or has distributed in the State of New Jersey and throughout the United States.

25.    BIPPL has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, including Genentech, who sell EVRYSDI® tablets for use throughout the United States, including in this judicial District.  On information and belief, and as indicated by the Zenara Notice Letter (as further defined herein), BIPPL prepared and filed, or aided, abetted, contributed to, and/or participated in the preparation and filing of the Zenara ANDA with the intention of seeking to market generic risdiplam nationwide, including within this judicial District.

26.    On information and belief, BIPPL plans to market and sell generic risdiplam in the State of New Jersey, list generic risdiplam on the State of New Jersey's prescription drug formulary, and seek Medicaid reimbursement for sales of the ANDA products in the State of New Jersey, either directly or through one or more of BIPPL's wholly owned subsidiaries, agents, and/or alter egos.

27.    On information and belief, BIPPL knows and intends that its proposed generic risdiplam product will be distributed and sold in New Jersey and will thereby displace sales of EVRYSDI® tablets, causing injury to Plaintiffs.  BIPPL intends to take advantage of its established channels of distribution in New Jersey for the sale of its proposed generic risdiplam product.

28.    This Court also has personal jurisdiction over BIPPL by virtue of, *inter alia*, its having engaged in systematic and continuous contacts with the State of New Jersey, including but

8

not limited to through its United States subsidiary BPI, which has a principal place of business in Monmouth Junction, NJ; having previously admitted, consented to, or declined to contest the jurisdiction of this Court; and/or having availed itself of this Court's rights, benefits, and privileges by asserting claims and counterclaims in prior District of New Jersey actions. *See, e.g.*, *Merck Sharp & Dohme BV et al. v. Aurobindo Pharma USA, Inc. et al.*, Civ. No. 20-02576, Dkt. No. 83-1 (D.N.J. July 15, 2021); *Merck Sharp & Dohme BV et al. v. Biophore Pharma Inc. et al.*, Civ. No. 20-03795, Dkt. No. 9 (D.N.J. May 13, 2020).

29.     On information and belief, BIPPL is in the business of manufacturing generic pharmaceuticals that it distributes or has distributed in the State of New Jersey and throughout the United States.

30.     BIPPL has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, including Genentech, who sell EVRYSDI® tablets for use throughout the United States, including in this judicial District.  On information and belief, and as indicated by the Zenara Notice Letter (as further defined herein), BIPPL prepared and filed, or aided, abetted, contributed to, and/or participated in the preparation and filing of the Zenara ANDA with the intention of seeking to market generic risdiplam nationwide, including within this judicial District.

31.     On information and belief, BIPPL plans to market and sell generic risdiplam in the State of New Jersey, list generic risdiplam on the State of New Jersey's prescription drug formulary, and seek Medicaid reimbursement for sales of the ANDA products in the State of New Jersey, either directly or through one or more of BIPPL's wholly owned subsidiaries, agents, and/or alter egos.

32.    On information and belief, BIPPL knows and intends that its proposed generic risdiplam product will be distributed and sold in New Jersey and will thereby displace sales of EVRYSDI® tablets, causing injury to Plaintiffs.  BIPPL intends to take advantage of its established channels of distribution in New Jersey for the sale of its proposed generic risdiplam product.

33.    Although this Court has personal jurisdiction over BIPPL for at least the reasons set forth above, in the absence of such personal jurisdiction in any single state, foreign entities such as BIPPL are subject to jurisdiction throughout the United States.  *See* Fed. R. Civ. P. 4(k)(2); *see, e.g.*, *Genetic Veterinary Scis.*, 933 F.3d at 1311–12; *M-I Drilling Fluids UK*, 890 F.3d at 1003.

34.    On information and belief, BPI, BIPPL, and Zenara collaborate with respect to the manufacture, regulatory approval, marketing, sale, and/or distribution of generic pharmaceutical products.  On information and belief, BPI, BIPPL, and Zenara are agents of one another or operate in concert as integrated parts of the same business group.

## **VENUE**

35.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) with respect to Plaintiffs' claims against Zenara because, *inter alia*, Zenara is a foreign corporation that is incorporated in India and may be deemed to reside and be sued in any judicial district in the United States in which Zenara is subject to the Court's personal jurisdiction.  *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).

36.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) with respect to Plaintiffs' claims against BPI because, *inter alia*, BPI resides in New Jersey by being incorporated in the State of New Jersey and by having a regular and established place of business in Monmouth Junction, NJ and has committed acts of infringement in the State

of New Jersey including, *inter alia*, by participating in the submission of the Zenara ANDA in the State of New Jersey.

37.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) with respect to Plaintiffs' claims against BIPPL because, *inter alia*, BIPPL is a foreign corporation that is incorporated in India and may be deemed to reside and be sued in any judicial district in the United States which BIPPL is subject to this Court's personal jurisdiction.  *See In re HTC Corp.*, 889 F.3d at 1357.

## EVRYSDI® TABLETS

38.     Genentech holds New Drug Application ("NDA") No. 219285 for EVRYSDI® (risdiplam) tablets, a survival of motor neuron 2 ("SMN2") splicing modifier indicated for the treatment of SMA in pediatric and adult patients, which Genentech sells under the trade name EVRYSDI® tablets.

39.     EVRYSDI® was initially approved in February 2020 as a powder for oral solution. On February 11, 2025, EVRYSDI® tablets were approved.

40.     The claims of the Asserted Patents cover, *inter alia*, EVRYSDI® tablets and/or their use.

41.     The active ingredient in EVRYSDI® tablets is risdiplam.

42.     The EVRYSDI® tablet prescribing information label (the "EVRYSDI® Label") states that each EVRYSDI® tablet contains 5 mg of risdiplam.

43.    The EVRYSDI® Label states that EVRYSDI® should be administered to a patient orally once daily and that the recommended dosage of EVRYSDI® is determined by age and body weight, as follows:

---------------------- **DOSAGE AND ADMINISTRATION** ----------------------
- Administer once daily with or without food per the table below (2.1):

| Age and Body Weight | Recommended Daily Dosage | Dosage Form |
|---|---|---|
| Less than 2 months of age | 0.15 mg/kg | EVRYSDI for Oral Solution |
| 2 months to less than 2 years of age | 0.2 mg/kg | |
| 2 years of age and older weighing less than 20 kg | 0.25 mg/kg | |
| 2 years of age and older weighing 20 kg or more | 5 mg | EVRYSDI for Oral Solution or EVRYSDI Tablet |

EVRYSDI® Label, Table 1.

44.    EVRYSDI® tablets are indicated for patients who are 2 years of age and older weighing 20 kg or more.  EVRYSDI® for oral solution is indicated for those same patients, as well as patients who are 2 years of age and older weighing less than 20 kg, patients who are 2 months to less than 2 years of age, and patients who are less than 2 months of age, at differing dose amounts.

45.    Pursuant to 21 U.S.C. § 355(b)(1), and attendant FDA regulations, the '955, '754, '444, '646, '789, and '273 Patents are listed in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "*Orange Book*") in connection with the EVRYSDI® tablet and the related NDA.

**THE ZENARA ANDA**

46.    On information and belief, Zenara and Biophore filed the Zenara ANDA under Section 505(j) of the Federal Food, Drug, and Cosmetic Act, *i.e.*, 21 U.S.C. § 355(j), seeking

approval to commercially manufacture, use, sell and/or market a generic version of EVRYSDI®

tablets (the "Zenara ANDA Product").

47.    On information and belief, the Zenara ANDA refers to and relies upon the

EVRYSDI® tablet NDA and contains data that, according to Zenara, demonstrates the

bioequivalence of the Zenara ANDA Product and EVRYSDI® tablets.

48.    On information and belief, Zenara and Biophore made and included in the Zenara

ANDA a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV Certification") that,

in their opinion and to the best of their knowledge, the Asserted Patents are invalid, unenforceable,

and/or that certain claims will not be infringed by the Zenara ANDA Product.

49.    Genentech, Roche, and PTC received written notice of the Zenara ANDA and

Paragraph IV Certification by letter dated April 23, 2026 (the "Zenara Notice Letter"), along with

an enclosed statement (the "Zenara Detailed Statement") of Zenara and Biophore's alleged factual

and legal bases for stating that the Asserted Patents are invalid, unenforceable, and/or will not be

infringed by the Zenara ANDA Product.

50.    The Zenara Detailed Statement does not provide any factual bases for stating that

the '754 Patent will not be infringed by the Zenara ANDA Product.

51.    The Zenara Detailed Statement does not provide any factual bases for stating that

the Asserted Patents are unenforceable.

52.    This action is being commenced within 45 days of receipt of the Zenara

Notice Letter.

53.    Zenara and Biophore have infringed one or more claims of the Asserted Patents

under 35 U.S.C. § 271(e)(2)(A) by virtue of the filing of the Zenara ANDA with a Paragraph IV

Certification and seeking FDA approval of the Zenara ANDA prior to the expiration of the Asserted Patents or any extensions thereof.

54.    Zenara and Biophore have infringed one or more claims of the Asserted Patents under 35 U.S.C. § 271(e)(2)(A) by virtue of filing the Zenara ANDA seeking FDA approval to commercially manufacture, use, offer for sale, sell, distribute in, or import into the United States a generic version of the EVRYSDI® tablets prior to the expiration of the Asserted Patents or any extensions thereof.  Zenara and Biophore will infringe one or more claims of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), (c), or (f) should it engage in, induce, or contribute to the commercial manufacture, use, offer for sale, sale, distribution in, or importation into the United States of a generic version of the EVRYSDI® tablets prior to the expiration of the Asserted Patents or any extensions thereof.

**THE ASSERTED PATENTS**

**U.S. Patent No. 9,586,955**

55.    The allegations above are incorporated herein by reference.

56.    Roche and PTC jointly own the '955 Patent entitled "Compounds for Treating Spinal Muscular Atrophy."  Genentech, Roche, and PTC have all necessary rights in and to the '955 Patent to assert infringement of, and seek relief for, infringement of the '955 Patent.

57.    The United States Patent and Trademark Office ("USPTO") duly and legally issued the '955 Patent on March 7, 2017.  The '955 Patent names as inventors Hongyan Qi, Soongyu Choi, Amal Dakka, Gary Mitchell Karp, Jana Narasimhan, Nikolai Naryshkin, Anthony A. Turpoff, Marla L. Weetall, Ellen Welch, Matthew G. Woll, Tianle Yang, Nanjing Zhang, Xiaoyan Zhang, Xin Zhao, Luke Green, Emmanuel Pinard, and Hasane Ratni.  Currently, the '955 Patent is duly assigned to Roche and PTC.  Roche has licensed its rights under the '955 Patent to

Genentech for the commercialization, manufacture, and sale of EVRYSDI® tablets and any product containing risdiplam.

58.    A true and correct copy of the '955 Patent is attached to this Complaint as Exhibit B.

59.    The '955 Patent claims chemical compounds with a pyridopyrimidinone core. For example, claim 1 of the '955 Patent claims:

A compound of Formula (IIa1):

(IIa1)

or a form thereof, wherein:

$R_1$ is heterocyclyl;

wherein, heterocyclyl is optionally substituted with one, two or three $R_3$ substituents and optionally, with one additional $R_4$ substituent; or,

wherein, heterocyclyl is optionally substituted with one, two, three or four $R_3$ substituents;

$R_2$ is heteroaryl;

wherein, heteroaryl is optionally substituted with one, two or three $R_6$ substituents and optionally, with one additional $R_7$ substituent;

$R_a$ is, in each instance, independently selected from hydrogen, halogen or $C_{1-8}$alkyl;

$R_b$ is hydrogen, halogen, $C_{1-8}$alkyl or $C_{1-8}$alkoxy;

$R_c$ is hydrogen, halogen or $C_{1-8}$alkyl;

$R_3$ is, in each instance, independently selected from cyano, halogen, hydroxy, oxo, $C_{1-8}$alkyl, halo-$C_{1-8}$alkyl, $C_{1-8}$alkyl-carbonyl, $C_{1-8}$alkoxy, halo-$C_{1-8}$alkoxy, $C_{1-8}$alkoxy-$C_{1-8}$alkyl, $C_{1-8}$alkoxy-carbonyl, amino, $C_{1-8}$alkyl-amino, $(C_{1-8}$alkyl$)_2$-amino, amino-$C_{1-8}$alkyl, $C_{1-8}$alkyl-amino-$C_{1-8}$alkyl, $(C_{1-8}$alkyl$)_2$-amino-$C_{1-8}$alkyl,

15

amino-$C_{1-8}$alkyl-amino, $C_{1-8}$alkyl-amino-$C_{1-8}$alkyl-amino, ($C_{1-8}$alkyl-amino-$C_{1-8}$alkyl)2-amino, ($C_{1-8}$alkyl)$_2$-amino-$C_{1-8}$alkyl-amino, [($C_{1-8}$alkyl)2-amino-$C_{1-8}$alkyl]$_z$-amino, ($C_{1-8}$alkyl-amino-$C_{1-8}$alkyl)($C_{1-8}$alkyl)amino, [($C_{1-8}$alkyl)$_2$-amino-$C_{1-8}$alkyl]($C_{1-8}$alkyl)amino, $C_{1-8}$alkoxy-$C_{1-8}$alkyl-amino, ($C_{1-8}$alkoxy-$C_{1-8}$alkyl)$_2$-amino, ($C_{1-8}$alkoxy-$C_{1-8}$alkyl)($C_{1-8}$alkyl)amino, $C_{1-8}$alkyl-carbonyl-amino, $C_{1-8}$alkoxy-carbonyl-amino, hydroxy-$C_{1-8}$alkyl, hydroxy-$C_{1-8}$alkoxy-$C_{1-8}$alkyl, hydroxy-$C_{1-8}$alkyl-amino, (hydroxy-$C_{1-8}$alkyl)$_2$-amino or (hydroxy-$C_{1-8}$alkyl)($C_{1-8}$alkyl)amino;

$R_4$ is $C_{3-14}$cycloalkyl, $C_{3-14}$cycloalkyl-$C_{1-8}$alkyl, $C_{3-14}$cycloalkyl-amino, aryl-$C_{1-8}$alkyl, aryl-$C_{1-8}$alkoxy-carbonyl, aryl-sulfonyloxy-$C_{1-8}$alkyl, heterocyclyl or heterocyclyl-$C_{1-8}$alkyl; wherein, each instance of $C_{3-14}$cycloalkyl, aryl and heterocyclyl is optionally substituted with one, two or three $R_5$ substituents;

$R_5$ is, in each instance, independently selected from halogen, hydroxy, cyano, nitro, $C_{1-8}$alkyl, halo-$C_{1-8}$alkyl, $C_{1-8}$alkoxy, halo-$C_{1-8}$alkoxy, amino, $C_{1-8}$alkyl-amino, ($C_{1-8}$alkyl)$_2$-amino or $C_{1-8}$alkyl-thio;

$R_6$ is, in each instance, independently selected from halogen, hydroxy, cyano, nitro, $C_{1-8}$alkyl, $C_{2-8}$alkenyl, halo-$C_{1-8}$alkyl, hydroxy-$C_{1-8}$alkyl, $C_{1-8}$alkoxy, halo-$C_{1-8}$alkoxy, $C_{1-8}$alkoxy-$C_{1-8}$alkyl, amino, $C_{1-8}$alkyl-amino, ($C_{1-8}$alkyl)$_2$-amino or $C_{1-8}$alkyl-thio; and,

$R_7$ is $C_{3-14}$cycloalkyl, $C_{3-14}$cycloalkyl-oxy, aryl, heterocyclyl or heteroaryl.

60.   As a further example, claim 11 claims:

The compound of claim 1, wherein $R_2$ is heteroaryl selected from furo[3,2-b]pyridinyl, furo[3,2-c]pyridinyl, furo[2,3-c]pyridinyl, thieno[3,2-c]pyridinyl, thieno[2,3-d]pyrimidinyl, 1H-pyrrolo[2,3-b]pyridinyl, 1H-pyrrolo[2,3-c]pyridinyl, pyrrolo[1,2-a]pyrimidinyl, pyrrolo[1,2-a]pyrazinyl, pyrrolo[1,2-b]pyridazinyl, pyrazolo[1,5-a]pyridinyl, pyrazolo[1,5-a]pyrazinyl, imidazo[1,2-a]pyridinyl, imidazo[1,2-a]pyrimidinyl, imidazo[1,2-c]pyrimidinyl, imidazo[1,2-b]pyridazinyl, imidazo[1,2-a]pyrazinyl, imidazo[2,1-b][1,3]thiazolyl, imidazo[2,1-b][1,3,4]thiadiazolyl, [1,3]oxazolo[4,5-b]pyridinyl and quinoxalinyl; wherein, each instance of heteroaryl is optionally substituted with one, two or three $R_6$ substituents and optionally, with one additional $R_7$ substituent.

16

**U.S. Patent No. 9,969,754**

61.    The allegations above are incorporated herein by reference.

62.    Roche and PTC jointly own the '754 Patent entitled "Compounds for Treating Spinal Muscular Atrophy."  The USPTO duly and legally issued the '754 Patent on May 15, 2018. The '754 Patent names as inventors Hasane Ratni, Luke Green, Marla L. Weetall, and Nikolai A. Naryshkin.  Currently, the '754 Patent is duly assigned to Roche and PTC.  Roche has licensed its rights under the '754 Patent to Genentech for the commercialization, manufacture, and sale of EVRYSDI® tablets and any product containing risdiplam.  Genentech, Roche, and PTC have all necessary rights in and to the '754 Patent to assert infringement of, and seek relief for, infringement of the '754 Patent.

63.    A true and correct copy of the '754 Patent is attached to this Complaint as Exhibit C.

64.    The '754 Patent claims chemical compounds with a pyridopyrimidinone core and an imidazopyridizine group.  For example, claim 36 of the '754 Patent claims:

> A compound of claim 24, wherein the compound is 7-(4,7-diazaspiro[2.5]octan-7-yl)-2-(2,8-dimethylimidazo[1,2-b] pyridazine-6-yl)pyrido[1,2-a]pyrimidin-4-one.

**U.S. Patent No. 11,534,444**

65.    The allegations above are incorporated herein by reference.

66.    Roche owns the '444 Patent entitled "Treatment of SMA."  The USPTO duly and legally issued the '444 Patent on December 27, 2022.  The '444 Patent names as inventors Jean-Paul Pfefen, Heidemarie Kletzl, and Lutz Mueller.  Currently, the '444 Patent is duly assigned to Roche.  Roche has licensed its rights under the '444 Patent to Genentech for the commercialization, manufacture, and sale of EVRYSDI® tablets and any product containing risdiplam.  Genentech

17

and Roche have all necessary rights in and to the '444 Patent to assert infringement of, and seek relief for, infringement of the '444 Patent.

67. A true and correct copy of the '444 Patent is attached to this Complaint as Exhibit D.

68. The '444 Patent claims methods for treating SMA using specific amounts of risdiplam based on the patient's body weight. For example, claim 1 of the '444 Patent claims:

> A method of treating spinal muscular atrophy (SMA) in a subject in need thereof comprising administering to said subject 7-(4,7-diazaspiro[2.5]octan-7-yl)-2-(2,8-dimethylimidazo[1,2-b]pyridazin-6-yl)pyrido[1,2-a]pyrimidin-4-one          or          a pharmaceutically acceptable salt thereof, wherein the administered dose          of          7-(4,7-diazaspiro[2.5]octan-7-yl)-2-(2,8-dimethylimidazo[1,2-b]pyridazin-6-yl)pyrido[1,2-a]pyrimidin-4-one or a pharmaceutically acceptable salt thereof is
>
> a. 0.25 mg/kg for a subject with a body weight of less than 20 kg, and
>
> b. 5 mg for a subject with a body weight of more than or equal to 20 kg.

69. Claim 9, which depends from claim 1, claims: The method of claim 1, wherein 7-(4,7-diazaspiro[2.5]octan-7-yl)-2-(2,8-dimethylimidazo[1,2-b]pyridazin-6-yl)pyrido[1,2-a]pyrimidin-4-one or a pharmaceutically acceptable salt thereof is administered orally at a dose of 5 mg for a subject with a body weight of more than or equal to 20 kg.

**U.S. Patent No. 11,827,646**

70. The allegations above are incorporated herein by reference.

71. Roche and PTC jointly own the '646 Patent entitled "Compounds for Treating Spinal Muscular Atrophy." The USPTO duly and legally issued the '646 Patent on November 28, 2023. The '646 Patent names as inventors Hasane Ratni, Luke Green, Marla L. Weetall, and Nikolai A. Naryshkin. Currently, the '646 Patent is duly assigned to Roche and PTC. Roche has

licensed its rights under the '646 Patent to Genentech for the commercialization, manufacture, and sale of EVRYSDI® tablets and any product containing risdiplam. Genentech, Roche, and PTC have all necessary rights in and to the '646 Patent to assert infringement of, and seek relief for, infringement of the '646 Patent.

72.     A true and correct copy of the '646 Patent is attached to this Complaint as Exhibit E.

73.     The '646 Patent claims methods of treating SMA using risdiplam. For example, claim 1 of the '646 Patent claims:

> A method for the treatment of spinal muscular atrophy in a human in need thereof, said method comprising administering to said human a therapeutically effective amount of

> or a pharmaceutically acceptable salt thereof.

74.     As another example, claim 11 of the '646 Patent claims:

> A method for the treatment of spinal muscular atrophy in a human in need thereof, said method comprising administering to said human a therapeutically effective amount of

## U.S. Patent No. 12,122,789

75.     The allegations above are incorporated herein by reference.

19

76.    Roche owns the '789 Patent entitled "Forms of Pyrido[1,2-a]pyrimidin-4-one Derivatives, Its Formulation and Its Process of Making." The USPTO duly and legally issued the '789 Patent on October 22, 2024. The '789 Patent names as inventors Roland Meier, Urs Schwitter, Anne De Paepe, Juergen Thun, and Frank Stowasser. Currently, the '789 Patent is duly assigned to Roche. Roche has licensed its rights under the '789 Patent to Genentech for the commercialization, manufacture, and sale of EVRYSDI® tablets and any product containing risdiplam. Genentech and Roche have all necessary rights in and to the '789 Patent to assert infringement of, and seek relief for, infringement of the '789 Patent.

77.    A true and correct copy of the '789 Patent is attached to this Complaint as Exhibit F.

78.    The '789 Patent claims solid forms of risdiplam. For example, claim 1 of the '789 Patent claims:

A solid form of a compound of formula (I)

(I)

Wherein the solid form is crystalline Form A having an x-ray powder diffraction (XRPD) pattern comprising at least two XRPD peaks selected from the group consisting of 8.3 (±0.2) degrees two-theta, 11.4 (±0.2) degrees two-theta, 15.1 (±0.2) degrees two-theta, 15.9 (±0.2) degrees two-theta, 17.0 (±0.2) degrees two-theta. 24.0 (±0.2) degrees two-theta, and 25.6 (±0.2) degrees two-theta angle of diffraction.

79.    The '789 Patent claims formulations of pharmaceutical compositions comprising risdiplam. As an example, claim 9 of the '789 Patent claims:

> A pharmaceutical composition comprising the solid form of claim **1**, and a pharmaceutically acceptable excipient.

80.     The '789 Patent also claims kits for the preparation of pharmaceutical compositions comprising risdiplam.  For example, claim 11 of the '789 Patent claims:

> A kit comprising the pharmaceutical composition of claim **9**, and water as solvent for constitution of said pharmaceutical composition into an oral aqueous solution.

**U.S. Patent No. 12,350,273**

81.     The allegations above are incorporated herein by reference.

82.     Roche owns the '273 Patent entitled "Treatment of SMA."  The USPTO duly and legally issued the '273 Patent on July 8, 2025.  The '273 Patent names as inventors Jean-Paul Pfefen, Heidemarie Kletzl, and Lutz Mueller.  Currently, the '273 Patent is duly assigned to Roche. Roche has licensed its rights under the '273 Patent to Genentech for the commercialization, manufacture, and sale of EVRYSDI® tablets and any product containing risdiplam.  Genentech and Roche have all necessary rights in and to the '273 Patent to assert infringement of, and seek relief for, infringement of the '273 Patent.

83.     A true and correct copy of the '273 Patent is attached to this Complaint as Exhibit G.

84.     The '273 Patent claims methods for treating SMA in a human patient using specific amounts of risdiplam based on the patient's body weight.  For example, claim 1 of the '273 Patent claims:

> 1.  A method of treating spinal muscular atrophy (SMA) in a human patient in need thereof, comprising administering to the patient a pharmaceutical composition comprising a compound of formula (I)



at a once daily oral dose of 5 mg, wherein the patient has a body weight of more than or equal to 20 kg.

## COUNT I
### (BY ALL PLAINTIFFS)
### (INFRINGEMENT OF THE '955 PATENT)

85.    The allegations above are incorporated herein by reference.

86.    On information and belief, Zenara and Biophore submitted the Zenara ANDA to FDA, and thereby seek FDA approval of the Zenara ANDA Product.

87.    Zenara and Biophore have infringed at least claims 1 and 11 of the '955 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting the Zenara ANDA with a Paragraph IV certification and thereby seeking FDA approval for the commercial manufacture, use, offer to sell, or sale in the United States or importation into the United States of a generic version of the EVRYSDI® tablets prior to the expiration of the '955 Patent.  At least claims 1 and 11 of the '955 Patent encompass risdiplam.  In the Zenara Notice Letter, Zenara and Biophore have not contested infringement of claims 1–4, 6–8, 11, and 20 of the '955 Patent.

88.    Zenara and Biophore's commercial manufacture, use, offer to sell, sale, or importation of the Zenara ANDA Product before the expiration of the '955 Patent would directly

infringe, or contribute to or induce infringement of, one or more claims of the '955 Patent, including, but not limited to, claims 1 and 11, under 35 U.S.C. § 271. Zenara and Biophore's infringement of at least claims 1 and 11 is either literal or under the doctrine of equivalents.

89. Plaintiffs will be harmed substantially and irreparably if Zenara and Biophore are not enjoined from infringing the '955 Patent and/or if FDA is not enjoined from approving the Zenara ANDA before the '955 Patent expires.

90. Plaintiffs have no adequate remedy at law.

91. Plaintiffs are entitled to all relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that FDA set the effective date of approval for the Zenara ANDA to be a date which is not any earlier than the expiration date of the '955 Patent, including any extensions, adjustments, and exclusivities associated with the '955 Patent.

92. Zenara and Biophore were aware of the '955 Patent when they submitted the Zenara ANDA. On information and belief, Zenara and Biophore's statement of the factual and legal basis regarding the invalidity of the '955 Patent is devoid of a good faith basis in either the facts or the law.

**COUNT II**
**(BY ALL PLAINTIFFS)**
**(INFRINGEMENT OF THE '754 PATENT)**

93. The allegations above are incorporated herein by reference.

94. On information and belief, Zenara and Biophore submitted the Zenara ANDA to FDA, and thereby seek FDA approval of the Zenara ANDA Product.

95. Zenara and Biophore have infringed at least claim 36 of the '754 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting the Zenara ANDA with a Paragraph IV certification and thereby seeking FDA approval for the commercial manufacture, use, offer to sell, or sale in the United States or importation into the United States of a generic version of the EVRYSDI® tablets

prior to the expiration of the '754 Patent. At least claim 36 of the '754 Patent encompasses risdiplam. In the Zenara Notice Letter, Zenara and Biophore have not contested infringement of claim 36—or any claim—of the '754 Patent.

96.     Zenara and Biophore's commercial manufacture, use, offer to sell, sale, or importation of the Zenara ANDA Product before the expiration of the '754 Patent would directly infringe, or contribute to or induce infringement of, one or more claims of the '754 Patent, including, but not limited to, claim 36, under 35 U.S.C. § 271. Zenara and Biophore's infringement of at least claim 36 is either literal or under the doctrine of equivalents.

97.     Plaintiffs will be harmed substantially and irreparably if Zenara and Biophore are not enjoined from infringing the '754 Patent and/or if FDA is not enjoined from approving the Zenara ANDA before the '754 Patent expires.

98.     Plaintiffs have no adequate remedy at law.

99.     Plaintiffs are entitled to all relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that FDA set the effective date of approval for the Zenara ANDA to be a date which is not any earlier than the expiration date of the '754 Patent, including any extensions, adjustments, and exclusivities associated with the '754 Patent.

100.    Zenara and Biophore were aware of the '754 Patent when they submitted the Zenara ANDA. On information and belief, Zenara and Biophore's statement of the factual and legal basis regarding the invalidity of the '754 Patent is devoid of a good faith basis in either the facts or the law.

## COUNT III
### (BY GENENTECH AND ROCHE)
### (INFRINGEMENT OF THE '444 PATENT)

101.    The allegations above are incorporated herein by reference.

102. On information and belief, Zenara and Biophore submitted the Zenara ANDA to FDA, and thereby seek FDA approval of the Zenara ANDA Product.

103. Zenara and Biophore have infringed at least claim 9 of the '444 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting the Zenara ANDA with a Paragraph IV certification and thereby seeking FDA approval for the commercial manufacture, use, offer to sell, or sale in the United States or importation into the United States of a generic version of the EVRYSDI® tablets prior to the expiration of the '444 Patent. At least claim 9 of the '444 Patent encompasses a method of treating SMA in a patient in need thereof with risdiplam. In the Zenara Notice Letter, Zenara and Biophore have not contested infringement of claims 9, 12, 23, 27, and 28 of the '444 Patent.

104. On information and belief, the Zenara ANDA essentially copies the EVRYSDI® Label as required by FDA, *see* 21 C.F.R. § 314.94(a)(8)(iv), and therefore instructs, recommends, encourages, and/or suggests physicians and/or patients to infringe at least claim 9 of the '444 Patent.

105. On information and belief, the Zenara ANDA Product is not a staple article of commerce and has no substantial uses that do not infringe at least claim 9 of the '444 Patent.

106. Zenara and Biophore's commercial manufacture, use, offer to sell, sale, or importation of the Zenara ANDA Product before the expiration of the '444 Patent would directly infringe, or contribute to or induce infringement of, one or more claims of the '444 Patent, including, but not limited to, claim 9, under 35 U.S.C. § 271. Zenara and Biophore's infringement of at least claim 9 is either literal or under the doctrine of equivalents.

107. Genentech and Roche will be harmed substantially and irreparably if Zenara and Biophore are not enjoined from infringing the '444 Patent and/or if FDA is not enjoined from approving the Zenara ANDA before the '444 Patent expires.

108.    Genentech and Roche have no adequate remedy at law.

109.    Genentech and Roche are entitled to all relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that FDA set the effective date of approval for the Zenara and Biophore ANDA to be a date which is not any earlier than the expiration date of the '444 Patent, including any extensions, adjustments, and exclusivities associated with the '444 Patent.

110.    Zenara and Biophore were aware of the '444 Patent when they submitted the Zenara ANDA.  On information and belief, Zenara and Biophore's statement of the factual and legal basis regarding the invalidity of the '444 Patent is devoid of a good faith basis in either the facts or the law.

**COUNT IV**
**(BY ALL PLAINTIFFS)**
**(INFRINGEMENT OF THE '646 PATENT)**

111.    The allegations above are incorporated herein by reference.

112.    On information and belief, Zenara and Biophore submitted the Zenara ANDA to FDA, and thereby seek FDA approval of the Zenara ANDA Product.

113.    Zenara and Biophore have infringed at least claims 1 and 11 of the '646 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting the Zenara ANDA with a Paragraph IV certification and thereby seeking FDA approval for the commercial manufacture, use, offer to sell, or sale in the United States or importation into the United States of a generic version of the EVRYSDI® tablets prior to the expiration of the '646 Patent.  At least claims 1 and 11 of the '646 Patent encompass treating SMA with a therapeutically effective amount of risdiplam.  In the Zenara Notice Letter, Zenara and Biophore have not contested infringement of claims 1, 3–6, 8–12, 14–17, 19–21, and 23 of the '646 Patent.

26

114. On information and belief, the Zenara ANDA essentially copies the EVRYSDI® Label as required by FDA, *see* 21 C.F.R. § 314.94(a)(8)(iv), and therefore instructs, recommends, encourages, and/or suggests physicians and/or patients to infringe at least claims 1 and 11 of the '646 Patent.

115. On information and belief, the Zenara ANDA Product is not a staple article of commerce and has no substantial uses that do not infringe at least claims 1 and 11 of the '646 Patent.

116. Zenara and Biophore's commercial manufacture, use, offer to sell, sale, or importation of the Zenara ANDA Product before the expiration of the '646 Patent would directly infringe, or contribute to or induce infringement of, one or more claims of the '646 Patent, including, but not limited to, claims 1 and 11, under 35 U.S.C. § 271. Zenara and Biophore's infringement of at least claims 1 and 11 is either literal or under the doctrine of equivalents.

117. Plaintiffs will be harmed substantially and irreparably if Zenara and Biophore are not enjoined from infringing the '646 Patent and/or if FDA is not enjoined from approving the Zenara ANDA before the '646 Patent expires.

118. Plaintiffs have no adequate remedy at law.

119. Plaintiffs are entitled to all relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that FDA set the effective date of approval for the Zenara ANDA to be a date which is not any earlier than the expiration date of the '646 Patent, including any extensions, adjustments, and exclusivities associated with the '646 Patent.

120. Zenara and Biophore were aware of the '646 Patent when they submitted the Zenara ANDA. On information and belief, Zenara and Biophore's statement of the factual and legal basis

regarding the invalidity of the '646 Patent is devoid of a good faith basis in either the facts or the law.

**COUNT V**
**(BY GENENTECH AND ROCHE)**
**(INFRINGEMENT OF THE '789 PATENT)**

121. The allegations above are incorporated herein by reference.

122. On information and belief, Zenara and Biophore submitted the Zenara ANDA to FDA, and thereby seek FDA approval of the Zenara ANDA Product.

123. Zenara and Biophore have infringed at least claims 1 and 9 of the '789 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting the Zenara ANDA with a Paragraph IV Certification and thereby seeking FDA approval for the commercial manufacture, use, offer to sell, or sale in the United States or importation into the United States of a generic version of the EVRYSDI® tablets prior to the expiration of the '789 Patent. At least claim 1 of the '789 Patent encompasses solid forms of risdiplam and at least claim 9 of the '789 Patent encompasses pharmaceutical compositions comprising risdiplam. In the Zenara Notice Letter, Zenara and Biophore have not contested infringement of claims 1–9 and 12–31 of the '789 Patent.

124. On information and belief, the Zenara ANDA essentially copies the EVRYSDI® Label as required by FDA, *see* 21 C.F.R. § 314.94(a)(8)(iv), and therefore instructs, recommends, encourages, and/or suggests physicians and/or patients to infringe at least claim 9 of the '789 Patent.

125. Zenara and Biophore's commercial manufacture, use, offer to sell, sale, or importation of the Zenara ANDA Product before the expiration of the '789 Patent would directly infringe, or contribute to or induce infringement of, one or more claims of the '789 Patent, including, but not limited to, claims 1 and 9, under 35 U.S.C. § 271. Zenara and Biophore's infringement of at least claims 1 and 9 is either literal or under the doctrine of equivalents.

126. Genentech and Roche will be harmed substantially and irreparably if Zenara and Biophore are not enjoined from infringing the '789 Patent and/or if FDA is not enjoined from approving the Zenara ANDA before the '789 Patent expires.

127. Genentech and Roche have no adequate remedy at law.

128. Genentech and Roche are entitled to all relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that FDA set the effective date of approval for the Zenara ANDA to be a date which is not any earlier than the expiration date of the '789 Patent, including any extensions, adjustments, and exclusivities associated with the '789 Patent.

129. Zenara and Biophore were aware of the '789 Patent when they submitted the Zenara ANDA. On information and belief, Zenara and Biophore's statement of the factual and legal basis regarding the invalidity of the '789 Patent is devoid of a good faith basis in either the facts or the law.

## COUNT VI
## (BY GENENTECH AND ROCHE)
## (INFRINGEMENT OF THE '273 PATENT)

130. The allegations above are incorporated herein by reference.

131. On information and belief, Zenara and Biophore submitted the Zenara ANDA to FDA, and thereby seek FDA approval of the Zenara ANDA Product.

132. Zenara and Biophore have infringed at least claim 1 of the '273 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting the Zenara ANDA with a Paragraph IV Certification and thereby seeking FDA approval for the commercial manufacture, use, offer to sell, or sale in the United States or importation into the United States of a generic version of the EVRYSDI® tablets prior to the expiration of the '273 Patent. At least claim 1 of the '273 Patent encompasses a method of treating SMA in a human patient in need thereof with risdiplam according to specific weight-

based dosing.  In the Zenara Notice Letter, Zenara and Biophore have not contested infringement of claims 1–6, 18–19, and 24–25 of the '273 Patent.

133.  On information and belief, the Zenara ANDA essentially copies the EVRYSDI® Label as required by FDA, *see* 21 C.F.R. § 314.94(a)(8)(iv), and therefore instructs, recommends, encourages, and/or suggests physicians and/or patients to infringe at least claim 1 of the '273 Patent.

134.  On information and belief, the Zenara ANDA Product is not a staple article of commerce and has no substantial uses that do not infringe at least claim 1 of the '273 Patent.

135.  Zenara and Biophore's commercial manufacture, use, offer to sell, sale, or importation of the Zenara ANDA Product before the expiration of the '273 Patent would directly infringe, or contribute to or induce infringement of, one or more claims of the '273 Patent, including, but not limited to, claim 1, under 35 U.S.C. § 271.  Zenara and Biophore's infringement of at least claim 1 is either literal or under the doctrine of equivalents.

136.  Genentech and Roche will be harmed substantially and irreparably if Zenara and Biophore are not enjoined from infringing the '273 Patent and/or if FDA is not enjoined from approving the Zenara ANDA before the '273 Patent expires.

137.  Genentech and Roche have no adequate remedy at law.

138.  Genentech and Roche are entitled to all relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that FDA set the effective date of approval for the Zenara ANDA to be a date which is not any earlier than the expiration date of the '273 Patent, including any extensions, adjustments, and exclusivities associated with the '273 Patent.

139.    On information and belief, Zenara and Biophore's statement of the factual and legal basis regarding the invalidity of the '273 Patent is devoid of a good faith basis in either the facts or the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Genentech, Roche, and PTC respectfully request that this Court enter judgment in its favor and grant the following relief:

A.    A judgment that Zenara and Biophore have infringed directly, contributed to, or induced infringement of one or more claims of the '955 Patent under 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents, by submitting the Zenara ANDA to FDA to obtain approval for the commercial manufacture, use, offer or sale, sale, distribution in, or importation into the United States of the Zenara ANDA Product before the expiration of the '955 Patent;

B.    A judgment that Zenara and Biophore have infringed directly, contributed to, or induced infringement of one or more claims of the '754 Patent under 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents, by submitting the Zenara ANDA to FDA to obtain approval for the commercial manufacture, use, offer or sale, sale, distribution in, or importation into the United States of the Zenara ANDA Product before the expiration of the '754 Patent;

C.    A judgment that Zenara and Biophore have infringed directly, contributed to, or induced infringement of one or more claims of the '444 Patent under 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents, by submitting the Zenara ANDA to FDA to obtain approval for the commercial manufacture, use, offer or

31

sale, sale, distribution in, or importation into the United States of the Zenara ANDA Product before the expiration of the '444 Patent;

D. A judgment that Zenara and Biophore have infringed directly, contributed to, or induced infringement of one or more claims of the '646 Patent under 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents, by submitting the Zenara ANDA to FDA to obtain approval for the commercial manufacture, use, offer or sale, sale, distribution in, or importation into the United States of the Zenara ANDA Product before the expiration of the '646 Patent;

E. A judgment that Zenara and Biophore have infringed directly, contributed to, or induced infringement of one or more claims of the '789 Patent under 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents, by submitting the Zenara ANDA to FDA to obtain approval for the commercial manufacture, use, offer or sale, sale, distribution in, or importation into the United States of the Zenara ANDA Product before the expiration of the '789 Patent;

F. A judgment that Zenara and Biophore have infringed directly, contributed to, or induced infringement of one or more claims of the '273 Patent under 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents, by submitting the Zenara ANDA to FDA to obtain approval for the commercial manufacture, use, offer or sale, sale, distribution in, or importation into the United States of the Zenara ANDA Product before the expiration of the '273 Patent;

G. A judgment that Zenara and Biophore will infringe directly, contribute to, or induce the infringement of one or more claims of the '955 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, if Zenara and Biophore market,

32

manufacture, use, offer for sale, sell, distribute in, or import into the United States the Zenara ANDA Product before the expiration of the '955 Patent;

H.      A judgment that Zenara and Biophore will infringe directly, contribute to, or induce the infringement of one or more claims of the '754 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, if Zenara and Biophore market, manufacture, use, offer for sale, sell, distribute in, or import into the United States the Zenara ANDA Product before the expiration of the '754 Patent;

I.      A judgment that Zenara and Biophore will infringe directly, contribute to, or induce the infringement of one or more claims of the '444 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, if Zenara and Biophore market, manufacture, use, offer for sale, sell, distribute in, or import into the United States the Zenara ANDA Product before the expiration of the '444 Patent;

J.      A judgment that Zenara and Biophore will infringe directly, contribute to, or induce the infringement of one or more claims of the '646 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, if Zenara and Biophore market, manufacture, use, offer for sale, sell, distribute in, or import into the United States the Zenara ANDA Product before the expiration of the '646 Patent;

K.      A judgment that Zenara and Biophore will infringe directly, contribute to, or induce the infringement of one or more claims of the '789 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, if Zenara and Biophore market, manufacture, use, offer for sale, sell, distribute in, or import into the United States the Zenara ANDA Product before the expiration of the '789 Patent;

33

L.      A judgment that Zenara and Biophore will infringe directly, contribute to, or induce the infringement of one or more claims of the '273 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, if Zenara and Biophore market, manufacture, use, offer for sale, sell, distribute in, or import into the United States the Zenara ANDA Product before the expiration of the '273 Patent;

M.      A judgment ordering that, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of the Zenara ANDA, under § 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)), shall not be earlier than the expiration of the '955, '754, '444, '646, '789, and '273 Patents including any extensions, adjustments, or exclusivities;

N.      A judgment ordering that Zenara and Biophore amend their Paragraph IV Certification to a Paragraph III Certification as provided in 21 C.F.R. § 314.94(a)(12)(viii)(A);

O.      Entry of preliminary and permanent injunctions pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283 enjoining Zenara and Biophore, their officers, agents, servants, employees, attorneys, affiliates, divisions, subsidiaries, and those persons in active concert or participation with any of them from infringing the '955, '754, '444, '646, '789 and '273 Patents, or contributing to or inducing the same, including the manufacture, use, offer to sell, sale, distribution or importation of any current or future versions of the Zenara ANDA Product before the expiration of the '955, '754, '444, '646, '789, and '273 Patents, including any applicable extensions, adjustments, and exclusivities;

P.      If Zenara and Biophore commercially manufacture, use, offers to sell, or sells in the United States or imports into the United States the Zenara ANDA Product prior

34

to the expiration of the '955, '754, '444, '646, '789, and '273 Patents, including any extensions, adjustments, or exclusivities, a judgment pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284 awarding Plaintiffs Genentech, Roche, and PTC monetary relief, together with interest;

Q.     An award to Plaintiffs of attorneys' fees in this action as an exceptional case pursuant to 35 U.S.C. § 285; and

R.     An award to Plaintiffs of costs and expenses in this action; and

S.     Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38.

*Of Counsel*:

Eric Alan Stone
Daniel J. Klein*
Eliza P. O'Connor*
Aileen Huang*
GROOMBRIDGE, WU, BAUGHMAN
   & STONE LLP
565 Fifth Ave, Suite 2900
New York, NY 10017
eric.stone@groombridgewu.com
dan.klein@groombridgewu.com
eliza.oconnor@groombridgewu.com
aileen.huang@groombridgewu.com
Tel: (332) 269-0030

Philip S. May
Alyssa B. Ertel*
GROOMBRIDGE, WU, BAUGHMAN
   & STONE LLP
801 17th Street NW, Suite 1050
Washington, D.C. 20006
philip.may@groombridgewu.com
alyssa.ertel@groombridgewu.com
Tel: (202) 505-5830

Dated: June 4, 2026


*Pro hac vice* application forthcoming

*s/ Keith J. Miller*
Keith J. Miller
Bradley A. Suiters
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
kmiller@rwmlegal.com
bsuiters@rwmlegal.com
Tel: (973) 690-5400

*Attorneys for Plaintiffs
Genentech, Inc., Hoffmann-La Roche Inc.,
and PTC Therapeutics, Inc.*